IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

CRIMINAL
NO. 18-424

RODOLFO BLANCO

## MEMORANDUM OPINION

**Schmehl, J.** */s/JLS*                                    **November 2, 2021**

Before the Court is a *pro se* motion filed by Defendant Blanco that seeks

compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The government has filed a

response, Defendant filed a reply and the motion is now ready for decision.

I.      **STATEMENT OF FACTS**

On July 8, 2019, Blanco pled guilty to one count of possession of cocaine with the

intent to distribute and one count of attempted possession of cocaine with the intent to

distribute. This offense was only the latest by Blanco in a long string of criminal conduct.

In 1995, Defendant pled guilty to harassment charges, and was sentenced to six days of

community service. In 1997, Blanco pled guilty to possession with intent to distribute

cocaine, and was sentenced to five years' imprisonment, which was suspended in favor of

three years' probation. In 2011, Blanco pled guilty to possession with intent to distribute

500 grams or more of cocaine. He was sentenced to 24 months' imprisonment and four

years of supervised release. He then violated the terms of his supervised release by

pleading guilty to local forgery charges and was ordered to serve 60 days of home

confinement.

In this case, on November 13, 2019, Blanco was sentenced to a term of imprisonment of 78 months. He is serving his sentence at FCI Loretto, with an anticipated release date of May 25, 2024. He has served approximately 33 months, and has credit for good conduct time of approximately 2 months, for total time served of 35 months.

On March 28, 2021, Blanco filed a *pro se* motion for compassionate release based on his asthma and need to assist in the care of his two disabled daughters. The government responded to Drexler's compassionate release motion and provided his medical records from the Bureau of Prisons. The records reveal that Blanco, who is 46 years old, presents a principal complaint of intense lower back and neck pain, for which medication is prescribed. He also has occasional bouts of vertigo. ECF No. 65. Defendant also suffers from asthma and hypertension, for which he takes medication. *Id.*

The records also show that on December 1, 2020, Blanco tested positive for COVID-19. He was monitored regularly thereafter and did not present any symptoms. He was noted to be recovered as of December 17, 2020. ECF No. 65. Lastly, the supplemental records show that as of June 10, 2021, Defendant has received both doses of the Moderna vaccine. ECF No. 68.

## II.     LEGAL AUTHORITY

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may
> not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor

3

cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant

(i)      is at least 65 years old;

(ii)     is experiencing a serious deterioration in physical or mental health because of the aging process; and

(iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test

for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla.

4

June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25,

2019). The Third Circuit held: "the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify

compassionate release, especially considering BOP's statutory role, and its extensive and

professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594,

597 (3d Cir. 2020). *See also United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir.

2020) (per curiam) (not precedential) ("the existence of a widespread health risk is not,

without more, a sufficient reason for every individual subject to a properly imposed

federal sentence of imprisonment to avoid or substantially delay reporting for that

sentence."), *id.* at 161 n.16 ("Similarly, the existence of some health risk to every federal

prisoner as the result of this global pandemic does not, without more, provide the sole

basis for granting release to each and every prisoner within our Circuit.").

   If a defendant's medical condition is found to be the type of condition that puts a

defendant at the increased risk of an adverse outcome from COVID-19, a court must next

analyze the factors under section 3553(a) and the Sentencing Commission's policy

statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in

section 3553(a) to the extent they are applicable" before a sentence may be reduced.

These factors require a determination of whether the sentence served "reflect[s] the

nature and circumstances of the offense and the history and characteristics of the

defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;"

and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court

to consider the Sentencing Commission's policy statement, which allows a sentence

reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

### III.      DISCUSSION

As stated above, Blanco asserts that he suffers from a condition that is a CDC risk factor in relation to COVID-19. Here, his conditions of asthma and hypertension are CDC risk factors and may place him at greater risk of an adverse outcome from COVID-19. However, as documented in his medical records, Blanco received the Moderna vaccine on June 10, 2021. The vast majority of cases deny Motions for Compassionate Release where the defendant has been administered a COVID-19 vaccine because the vaccines are effective, it is evidence that the inmate is protecting themself from the virus, and it shows BOP's effort in protecting inmates. *United States v. Perry*, No. 15-383, ECF #81 (E.D. Pa. Apr. 9, 2021); *United States v. Roper*, 2021 WL 963583 (E.D. Pa. Mar. 15, 2021); *United States v. Stiver*, 2021 WL 1110593 (W.D. Pa. Mar. 23, 2021); *United States v. Lipscomb*, 2021 WL 734519 (M.D. Fla. Feb. 25, 2021); *United States v. Groom*, 2021 WL 1220225 (S.D. Ohio Apr. 1, 2021).

In addition, it is worth noting that Blanco contracted COVID-19, was asymptomatic and recovered from it without any serious consequences. In this circumstance, the majority of courts to address the matter have concluded that the risk is mitigated, and compassionate release is not justified. *See, e.g., United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here."); *see also United States v. Carter*, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021) (McHugh, J.); *United States v. Dan*, 2020 WL 3453845, at *5 (D. Haw. June 24, 2020);

*United States v. Mogan*, 2020 WL 2558216, at \*4 n.29 (E.D. La. May 20, 2020); *United States v. Russo*, 2020 WL 1862294, at \*8 (S.D.N.Y. Apr. 14, 2020) (denying otherwise meritorious motion for compassionate release because defendant tested positive for COVID-19 during the pendency of the motion); *United States v. McCollough*, 2020 WL 2812841, at \*2 (D. Ariz. May 29, 2020).

Further, the Federal Bureau of Prisons, as of the date of this opinion, reports that there are 820 inmates housed at FCI Loretto. FEDERAL BUREAU OF PRISONS, *FCI Loretto*, https://www.bop.gov/locations/list.jsp (last visited on November 2, 2021). As of the date of this opinion, there are no inmates and only one staff member who are currently infected with COVID-19 at FCI Loretto. FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited on November 2, 2021). Further, there are 142 staff members and 759 inmates at FCI Loretto who have received COVID-19 vaccinations. FEDERAL BUREAU OF PRISONS, *FCI Loretto*, https://www.bop.gov/coronavirus/ (last visited on November 2, 2021). These numbers show that COVID-19 is well under control at FCI Loretto, where Blanco is incarcerated.

Lastly, even assuming Blanco could present an extraordinary and compelling reason for relief, in examining the 3553(a) factors and his possible danger to the community, release still must be denied. In examining these factors, I must evaluate whether the sentence served reflects the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect of the law, and affords adequate deterrence to criminal conduct.

First, including good time credit, Blanco has only served approximately 38 months of his 78-month sentence, or approximately forty-nine percent. Moreover, he pled

guilty to trafficking more than two kilograms of cocaine, and the evidence collected

during the investigation showed that defendant was responsible for trafficking much

more than that. There is no doubt that at the time of his offense, the defendant was

engaged in prohibited conduct that presented a significant danger to the community. If he

were to be released, that danger would continue. In addition, Blanco has a lengthy record

of criminal conduct, including the commission of crimes while on supervised release and

violation of prison rules while awaiting sentencing at the FDC. Considering Blanco's

serious criminal conduct, he should serve the balance of his 78-month prison sentence to

deter him from this type of conduct again in the future.

Blanco also requested compassionate release based upon family circumstances,

stating that he has two daughters, 20 years old, who require medical assistance. He

provided hospital documentation regarding one of those daughters, dated November 12,

2018, which stated that the young woman was profoundly disabled. The physician

advised that at the time the patient was a quadriplegic who relied on a ventilator to

breathe and was nonverbal. The report advised, "She is dependent on her mother,

Madeline Morales to provide for all of her activities of daily living as well as for her

finances, health and safety." The report stated that other unspecified "adult skilled

caregivers" aided at the home. Blanco did not provide information regarding his other

daughter.

Blanco has not been a caregiver for either child in recent years and it is evident

that there are adults who are providing the necessary assistance. Further, it does not

appear that the defendant has ever been a caregiver for these children. The presentence

report related that Blanco fathered 11 children by four women, and that before his

8

incarceration Blanco had been living with his girlfriend, Bernice Collazo. Apparently, he was not living with any of his children at the time, but after his incarceration, Yhaira Gonzales, the mother of two of his children and stepmother of four other of his children, moved in with Ms. Collazo. PSR ¶¶ 61-69.

The two young women who are disabled are two of the four children Blanco fathered in an earlier relationship with Madeline Morales. They apparently never lived with Blanco or had not for years. The PSR stated that he provided child support when needed. It added, "He advised that he was actively involved in his children's lives, and he had their two youngest children on a weekly basis. He stated that his twins suffer from Hydrocephalus and are prone to infections. He did not bring them to his home in Langhorne to limit their contact with the other children." PSR ¶ 67. In his motion for compassionate release, Blanco states that if released he would live with Yhaira and her six children in Langhorne, not with Ms. Morales and his two disabled daughters.

There is thus no basis for compassionate release in this circumstance, as there is no showing that Blanco is an essential caregiver for the two daughters. *See, e.g., United States v. Hill*, 2020 WL 3037226 (W.D. Ark. June 5, 2020) (there is insufficient evidence that the defendant is the only caregiver for his ailing wife).

Accordingly, considering Blanco's vaccination status, his recovery from COVID, the low case numbers at FCI Loretto and his failure to show that he is an essential caregiver to his disabled daughters, Blanco does not warrant a sentence reduction or release in any fashion at the present time.

## IV.    CONCLUSION

For the foregoing reasons, Blanco's motion for compassionate release is denied.